JOHN McNEE *vs.* COBURN TROLLEY TRACK COMPANY.

Hampden.    October 20, 1897. — February 24, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Master and Servant — Use of Defective Elevator — Negligence — Warning by Posting of Notice in Elevator — Law and Fact.*

Where the general condition of an elevator used for carrying the workmen in a factory up and down while engaged in their work is such as to render the employer negligent in continuing its use, if this is done without warning them of the risk, and he, having been fairly put upon inquiry as to its safety, posts a notice in the elevator that all persons riding on it do so at their own risk, an employee, who is injured by the fall of the elevator through a defect a long time after the posting of the notice and after it has become soiled and somewhat indistinct and torn, is entitled, in an action for his injury, to go to the jury upon the question whether the notice remained in force at the time of the accident, or had become a dead letter.

TORT, for personal injuries occasioned to the plaintiff by the fall of an elevator upon which he was riding while in the defendant's employ. Trial in the Superior Court, before *Mason*, C. J., who directed the jury to return a verdict for the defendant; and reported the case for the determination of this court. If the case should have been submitted to the jury, judgment was to be entered for the plaintiff in a sum named; otherwise, judgment on the verdict. The facts sufficiently appear in the opinion.

The case was submitted on briefs to all the justices.

*A. L. Green & W. C. Heywood*, for the plaintiff.

*H. A. King*, for the defendant.

ALLEN, J.    The general condition of the elevator was such that a jury might find that the defendant would be negligent in continuing its use for carrying workmen up and down while engaged in their work, if this was done without warning them of the risk.    It is true that the particular defect which caused the accident was not open to observation or easy to discover. But there was evidence tending to show that the accident was caused by the use of the elevator while it was in a condition which rendered it unsuitable for use, and that the defendant was fairly put upon inquiry as to its safety; and that the defendant's duty in this respect was different from and greater than that of the workmen themselves.

The question then remains whether the posting of the notices in the elevator * showed such a performance by the defendant of its duty of warning or cautioning the workmen, or such contributory negligence or assumption of the risk on the part of the plaintiff, as to entitle the defendant to have the case withdrawn from the jury.    While upon the evidence reported a verdict for the defendant would be more satisfactory, we are unable to hold that the defendant was entitled to such verdict as a matter of law.    As a general rule, the sufficiency of such warning or caution is a question of fact for the jury.    *Indermaur* v. *Dames*, L. R. 1 C. P. 274; *S. C.* L. R. 2 C. P. 311.    It is true that the plaintiff was not at liberty to shut his eyes in order to avoid reading a plain notice of warning.    If it be assumed that the plaintiff must be held chargeable with a knowledge of the contents of the notice, or at least that the defendant performed its duty of cautioning the workmen by posting the notices in the elevator, we think the plaintiff still had the right to go to the jury upon the question whether the notices remained in force at the time of the accident, or had become a dead letter.    There was evidence tending to show that the notices were put in the elevator a long time before the accident by a former treasurer

---

* These notices read as follows: " All persons riding on this elevator do so at their own risk."

whose connection with the company had then ceased, that they had become soiled and somewhat indistinct and torn, and that all of the defendant's workmen, including the general superintendent of the building, were in the regular habit of using the elevator to carry them up and down, and had been so for some months prior to the accident. There was room for a legitimate argument that the defendant could not have intended to keep such a rule in force forever, and to furnish an elevator for permanent use by the men at their own sole risk; and that the defendant expected the men to use it while they were engaged in its work, and that it was for the defendant's advantage that they should do so, from the saving of time thereby secured. It might be found that the plaintiff, even if he knew of the terms of the notice, might nevertheless assume that its force had ceased.

If one who has posted a notice of entire prohibition permits it to be habitually disregarded, as, for instance, a notice not to ride on the platform of a street railway car, or in the baggage car of a train, a practical invitation to violate it may be inferred from habitual usage which is known to him. Long continued practice to the contrary may have the effect to supersede or show a waiver of the rule. *O'Donnell* v. *Allegheny Valley Railroad,* 59 Penn. St. 239. *Pennsylvania Railroad* v. *Langdon,* 92 Penn. St. 21. *Waterbury* v. *New York Central & Hudson River Railroad,* 17 Fed. Rep. 671. The notice in the present case was not one of entire prohibition, but, in the opinion of a majority of the court, the plaintiff upon the evidence had a right to go to the jury upon the question whether it still remained in force; and, according to the terms of the report, there must be

*Judgment for the plaintiff.*