548 So.2d 679 (1989)
Hattie DANIELS, As Director, Internal Audits and Review Department, and the City of Miami, Appellants,
v.
William BRYSON and the Miami Association of Fire Fighters Local 587, Appellees.
Nos. 88-1026, 88-1475.
District Court of Appeal of Florida, Third District.
June 27, 1989.
Rehearing Denied October 9, 1989.
Jorge L. Fernandez, City Atty., and John J. Copelan, Jr., and Kathryn S. Pecko, Deputy city Attys., for appellants.
Kaplan, Sicking & Bloom and Kathleen M. Phillips, Donald Feldman, Miami, for appellees.
Before JORGENSON, COPE and LEVY, JJ.
COPE, Judge.
We have for review a permanent injunction entered by the trial court which directs the City of Miami and one of its employees *680 to comply with their obligations under the Public Records Law, Chapter 119, Florida Statutes (1987), with respect to any future request for documents pertaining to a particular task force report. Because appellees did not make a sufficient showing of likelihood of future violations of Chapter 119 by the appellants, we reverse.
In 1987 the City of Miami decided to appoint a special investigative panel to review certain perceived problems pertaining to the Fire Department. Appellees, the Miami Association of Fire Fighters and one of its officers, requested various documents pertaining to the panel and its work. All of the documents were concededly non-confidential public records subject to disclosure to any citizen.[1] After experiencing a series of difficulties in obtaining timely, complete production of the requested documents, appellees filed suit seeking to obtain the documents and also seeking damages and injunctive relief.
At a hearing on July 10, 1987, the trial court granted, in part, appellees' motion for temporary injunction by ordering production of certain documents appellees had previously requested. The City complied. In October, 1987 the panel rendered its final report to the City of Miami and disbanded. No further requests for records were made by appellees with respect to the panel or its work.
In March, 1988 the appellees abandoned their claims for compensatory and punitive damages, and the case proceeded to trial on the issue of permanent injunctive relief. The trial court found that there had been intentional noncompliance with Chapter 119, Florida Statutes, and entered a final judgment which provided, in part:
Defendant, City of Miami, by and through Defendant, Dr. Hattie Daniels, is hereby permanently enjoined from further violating the rights of Plaintiffs to inspect and examine non-privileged public records of the City of Miami under the custody of Defendant, Dr. Hattie Daniels, as those records pertain directly or indirectly to the matters which were considered by the aforesaid National Investigative Panel and which were made a part of the Panel's report of October 31, 1987.
The trial court subsequently awarded attorney's fees pursuant to Chapter 119. The City has appealed the entry of the permanent injunction, as well as the award of attorney's fees.
We cannot subscribe to the City's contention that injunctive relief is not available in actions brought pursuant to Chapter 119, and the corollary suggestion that the exclusive remedy is mandamus. The statute in no way specifies the form of the action. See §§ 119.07(2)(b)-(d), 119.11, 119.12, Fla. Stat. (1987). While it is true that plaintiffs frequently elect to employ mandamus, see, e.g., Michel v. Douglas, 464 So.2d 545, 546 (Fla. 1985); Donner v. Edelstein, 415 So.2d 830, 831 (Fla. 3d DCA 1982), the act does not confine them to that remedy.
We have no hesitation in holding that injunctive relief is available upon an appropriate showing for a violation of Chapter 119. United Faculty of Florida FEA v. Branson, 350 So.2d 489 (Fla. 1st DCA 1977); State ex rel. Dep't of Gen. Services v. Willis, 344 So.2d 580 (Fla. 1st DCA 1977). The impermissible withholding of documents otherwise required to be disclosed constitutes, in and of itself, irreparable injury to the person making the public records request. Since the purpose of Chapter 119 is to afford disclosure of information without delay to any member of the public making a request, nondisclosure prevents access to the information and is an injury not ordinarily compensable in damages.
Where a litigant satisfies the requirements for injunctive relief, such relief will lie under the Public Records Law. Injunctive relief would be appropriate, we believe, where there is a demonstrated pattern of noncompliance with the Public Records Law, together with a showing of *681 likelihood of future violations. Mandamus would not be an adequate remedy, as the writ will not lie to prevent future harm. State ex rel. Fraternal Order of Police v. City of Orlando, 269 So.2d 402 (Fla. 4th DCA 1972), cert. denied, 276 So.2d 54 (Fla. 1973).
While injunctive relief is available in appropriate circumstances, we conclude that appellees were not entitled to a permanent injunction in the present case. That is so because the investigative panel had concluded its work and disbanded several months prior to the final hearing in this matter. Although the trial court found that there had been past violations, there was no finding or showing of a likelihood of future violations. The controversy was, as a practical matter, moot.
Florida adheres to the rule that "an injunction will not be granted where it appears that the acts complained of have already been committed and there is no showing by the pleadings and proof that there is a reasonably well grounded probability that such course of conduct will continue in the future." City of Jacksonville v. Wilson, 157 Fla. 838, 844, 27 So.2d 108, 111 (1946). In the analogous context of the public meetings law, § 286.011, Fla. Stat. (1987),[2] an injunction was sustained where the trial court found that a school board engaged in a regular practice of holding nonpublic meetings and asserted it was entitled to do so as a matter of right. Board of Public Instruction v. Doran, 224 So.2d 693 (Fla. 1969). The Florida Supreme Court stated:
While it is well established that courts may not issue a blanket order enjoining any violation of a statute upon a showing that the statute has been violated in some particular respects (see Moore v. City Dry Cleaners & Laundry, 41 So.2d 865 (Fla. 1949)), nevertheless they do possess authority to restrain violations similar to those already committed. See Interstate Commerce Commission v. Keeshin Motor Express, 134 F.2d 228 (C.C.A.Ill. 1943). This Court may enjoin violations of a statute where one violation has been found if it appears that the future violations bear some resemblance to the past violation or that danger of violations in the future is to be anticipated from the course of conduct in the past. See National Labor Relations Board v. Express Publishing Company, 312 U.S. 426, 437, 61 S.Ct. 693, 700, 85 L.Ed. 930 (1941).
Id. at 699-700 (emphasis in original).
While the quoted language is susceptible of the interpretation that a showing of past violations will, without more, justify entry of an injunction to restrain future violations of the same type, we do not believe the Doran court intended to paint with so broad a brush. In Doran future violations were reasonably to be anticipated; here they are not. See generally National Labor Relations Board v. Express Publishing Co., 312 U.S. 426, 436-37, 61 S.Ct. 693, 700, 85 L.Ed. 930, 937 (1941) ("The breadth of the order, like the injunction of a court, must depend upon the circumstances of each case, the purpose being to prevent violations, the threat of which in the future is indicated because of their similarity or relation to those unlawful acts which the Board has found to have been committed ... in the past."). While in many contexts, like that of Doran, the circumstances of past violations give rise to a reasonable inference that the past course of conduct will continue in the future, on this record it appears that by the time of the final hearing the controversy was effectively moot. Permanent injunctive relief therefore should not have been entered, and the final judgment must be reversed.
At the final hearing the trial court awarded attorney's fees pursuant to section 119.12, Florida Statutes (1987). The trial court applied an analysis based on Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), and *682 awarded an enhanced fee based on a multiplier. The appellees' fee agreement provided that they would be compensated at the rate of $90.00 per hour. In the event statutory fees were awarded by the court, the award would first be employed to reimburse the client for attorney's fees and costs the client had paid, and any excess would be retained by appellees' counsel. The trial court set a reasonable hourly rate of $175 per hour, and awarded a contingency risk factor of 2.5.
As set forth in Rowe and clarified in subsequent cases, "in no case should the court-awarded fee exceed the fee agreement reached by the attorney and the client." Rowe, 472 So.2d at 1151; see Perez-Borroto v. Brea, 544 So.2d 1022 (Fla. 1989); Miami Children's Hospital v. Tamayo, 529 So.2d 667, 668 (Fla. 1988). Where there is a conventional hourly fee agreement, the amount awarded by the court against the opposing party may not exceed the amount the client would be obliged to pay his or her own attorney. Thus, in Perez-Borroto, the court could award no more than the hourly and daily rate which defense counsel could bill his client; the amount of the award could not be enhanced above that level by application of the Rowe factors. 544 So.2d at 1023; see Rowe, 472 So.2d at 1151.
Appellees argue, however, that their fee is partially contingent within the meaning of Chrysler Corp. v. Weinstein, 522 So.2d 894, 896 (Fla. 3d DCA 1988), because any recovery in excess of $90 per hour is contingent upon an award as prevailing party. Chrysler involved a flat $1500 fee, with the remaining fee contingent on success. Our court concluded that the agreement was for a partially contingent fee and applied a Rowe analysis. Id. at 896; see First State Ins. Co. v. General Electric Credit Auto Lease, Inc., 518 So.2d 927, 928 (Fla. 3d DCA 1987).
Within the context of Rowe a contingent fee is one in which "the attorney working under a contingent fee contract receives no compensation when his client does not prevail... ." 472 So.2d at 1151; accord Quanstrom v. Standard Guaranty Ins. Co., 519 So.2d 1135, 1136 (Fla. 5th DCA 1988). Where, as here, appellees are compensated on a flat hourly basis regardless of outcome, the possibility of a court-ordered enhancement does not convert the arrangement into a contingent fee. That is particularly so where, in the present case, the hourly fee is the fee customarily charged the particular client. The nominal flat fee in Chrysler is clearly distinguishable, for there the attorneys assumed a significant risk of nonpayment. While other partial contingency arrangements may be permissible, see First State Ins. Co. v. General Electric Credit Auto Lease, the appellees' fee arrangement cannot be considered contingent within the meaning of Rowe and its progeny.[3]
Since we have reversed the permanent injunction, we must remand for a redetermination of the hours fairly compensable. Appellees were clearly the prevailing parties at the preliminary stage, and are entitled to "the reasonable costs of enforcement including reasonable attorneys' fees." § 119.12(1), Fla. Stat. (1987). The City contends that appellees may only be awarded fees for the initial hearing held before the trial judge. We believe the trial judge is in a better position to make a factual determination regarding the objectives sought by appellees, the extent of statutory enforcement obtained, and the time expended in achieving those results.[4]
For the reasons stated, the final judgment and the order awarding attorney's *683 fees are reversed. The order awarding attorney's fees is remanded for a redetermination of the fee award.
NOTES
[1] Under the terminology of the Public Records Law, all documents in the hands of a public agency are public records. § 119.011(1), Fla. Stat. (1987). Other provisions of the Public Records Law then determine whether an exemption precludes the documents' public disclosure. Id. § 119.07.
[2] The public meetings law expressly provides that the circuit court may "issue injunctions to enforce the purposes of this section upon application by any citizen of this state." § 286.011(2), Fla. Stat. (1987); see Board of Public Instruction v. Doran, 224 So.2d 693, 699 (Fla. 1969).
[3] Appellees have urged that Glades, Inc. v. Glades Country Club Apartments Association, Inc., 534 So.2d 723 (Fla. 2d DCA 1988) supports their position. Glades involved an agreement for a reasonable fee, id. at 724, a circumstance not present here. Glades would not in any event assist appellees, since the Glades court concluded that a contingency risk multiplier "is appropriate only in a case involving a totally contingent fee arrangement with the client... ." Id. at 726. On that specific issue Glades is in accord with the result that we reach.
[4] We do not express any opinion as to whether any of appellees' time expended after entry of the temporary injunction is fairly compensable as having contributed to enforcement of appellees' rights under Chapter 119.